**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN JOSEPH NOBLE IV,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>D. ADAMS and D. CUEVAS,<br><br>　　　　Defendants. | 1:03-cv-05407-AWI-SMS-PC<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br>**(Doc. 134.)** |

　　　Plaintiff Steven Joseph Noble IV ("Plaintiff") is a state prisoner proceeding pro se with this civil rights action under 42 U.S.C. § 1983. Plaintiff filed this action on April 8, 2003. The case now proceeds on the Amended Complaint filed on May 12, 2003 against Defendants D. Adams and D. Cuevas ("Defendants") on Plaintiff's Eighth Amendment access to exercise claim for the period between January 31, 2002 and July 31, 2002. This case is presently set for trial on October 20, 2009, with a telephonic pretrial conference on September 14, 2009. On July 27, 2009, Plaintiff filed his pretrial statement. On August 24, 2009, Defendants filed their pretrial statement.

**PROCEDURAL BACKGROUND**

　　　In the Amended Complaint, Plaintiff alleged that his constitutional rights were violated because he was denied access to the courts, prison officials unlawfully interfered with his mail, and Defendants violated his Eighth Amendment rights by limiting his access to outdoor exercise from January 9, 2002 to April 2003.

1

On December 6, 2006, Defendants filed a Motion for Summary Judgment.[1]  On March 26, 2007, the Magistrate Judge issued Findings and Recommendations that Defendants' Motion be granted on Plaintiff's denial of access to the courts and mail interference claims.  However, the Magistrate Judge found that, with regard to Plaintiff's Eighth Amendment claim, Defendant Adams and Cuevas failed to refute the allegations in the complaint.  Specifically, the Magistrate Judge found that Defendants failed to provide any specific evidence concerning the times Plaintiff was allotted time out of his cell and for how long during period in question.  After reviewing the objections, this court adopted the Findings and Recommendations on May 18, 2007.  The court gave Defendants an opportunity to file a second Motion for Summary Judgment.

Defendants Cuevas and Adams filed their second Motion for Summary Judgment on June 18, 2007.  On March 31, 2008, the court granted Defendants' Motion for Summary Judgment in part.  The court granted summary judgment in favor of Defendants regarding Plaintiff's Eighth Amendment access to exercise claim for the period between August 1, 2002, until April 1, 2003.  However, the court denied Defendants' Motion for Summary Judgment without prejudice regarding Plaintiff's Eighth Amendment access to exercise claims for the period between January 9, 2002, and July 31, 2002.  The court found that Defendants had failed to point to specific facts concerning what was done during the investigation from January 9, 2002 to July 31, 2002 as to demonstrate that the restriction to the yard had a penological purpose that would warrant a deprivation of exercise for nearly seven months.  In addition, the court found that there was no explanation of why certain privileges were restored in the order that they were given or why officials felt that allowing prisoners access to the exercise yard would pose a danger to the safety of the institution.  In denying summary judgment for this time period, the court gave Defendants the opportunity to file a third Motion for Summary Judgment.

Defendants filed their third Motion for Summary Judgment on July 8, 2008.  On March 25,

---

[1] On December 3, 2004, prior to filing the motion for summary judgment, Defendants also moved to dismiss the action on the grounds that Plaintiff failed to exhaust his administrative remedies.  An amended motion was submitted on December 21, 2004. The Magistrate Judge issued Findings and Recommendations that the Motion be denied on August 19, 2005.  The court adopted the Findings and Recommendations on September 21, 2005.

2

1  2009, the court granted Defendants' Motion for Summary Judgment in part.  The court granted
2  summary judgment in favor of Defendants regarding Plaintiff's Eighth Amendment access to
3  exercise claim for the period from January 9, 2002 through January 30, 2002.   However, the court
4  denied Defendants' Motion for Summary Judgment regarding Plaintiff's Eighth Amendment access
5  to exercise claims for the period between January 31, 2002 through July 31, 2002.  The court found
6  that it was unable to determine whether Defendants' actions supported a penological purpose,
7  whether the restriction and its duration bore a relationship to legitimate attempts to ease the
8  emergency from January 31, 2002, and whether the right to outdoor exercise was clearly established
9  given the specific emergency prison officials were faced with.  Concerning Defendants' arguments
10 on why they were entitled to qualified immunity, the court found that it could not determine the
11 reasonableness of Defendants' beliefs or their actions because Defendants had not provided enough
12 information regarding the exact sequence of events of the lockdown nor had they submitted any
13 declarations regarding their decisions to restrict inmates' access to outdoor exercise.
14      On July 15, 2009, Defendants filed a Motion for Reconsideration of the court's March 25,
15 2009 order.    Defendants contend that the Ninth Circuit's decision in Norwood v. Vance, 572 F.3d
16 626 (9th Cir. 2009), entitles them to qualified immunity in this action because the court in Norwood
17 found that the law was not established in 2002 on the use of lockdowns in response to emergencies.
18 On July 27, 2009, Plaintiff filed an opposition to the Motion.  On August 6, 2009, Defendants filed
19 a reply to the opposition.

**LEGAL STANDARD**

21      The court has discretion to reconsider and vacate a prior order.  Barber v. Hawaii, 42 F.3d
22 1185, 1198 (9th Cir.1994); United States v. Nutri-cology, Inc., 982 F.2d 394, 396 (9th Cir.1992).
23 Motions for reconsideration are disfavored, however, and are not the place for parties to make new
24 arguments not raised in their original briefs.  Zimmerman v. City of Oakland, 255 F.3d 734, 740 (9th
25 Cir. 2001);  Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925-26 (9th
26 Cir.1988).  Nor is reconsideration to be used to ask the court to rethink what it has already thought.
27 Walker v. Giurbino, 2008 WL 1767040, *2 (E.D.Cal. 2008);  United States v. Rezzonico, 32

F.Supp.2d 1112, 1116 (D.Ariz.1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001). Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc). The Local Rules provide that, when filing a motion for reconsideration, a party must show that there are "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." Local Rule 78-230(k)(3). Reconsideration is appropriate if there is an intervening change in controlling law. School Dist. No. 1J Multonomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

## DISCUSSION

### A. Parties' Positions

Defendants request the court reconsider its order of March 25, 2009. Defendants contend that reconsideration is warranted based on the Ninth Circuit's decision in Norwood. Defendants argue that Norwood stands for the proposition that a prisoner's right to outdoor exercise after a prison is locked down due to an emergency was not clearly established in 2002. Defendants believe that in light of this decision, they are entitled to qualified immunity in this case.

Plaintiff contends that the Ninth Circuit's decision in Norwood does not apply to this case because, unlike here, in Norwood there had been a "series of brutal attacks" and the Norwood defendants took measures to provide alternate means of exercise. Plaintiff also argues that due to disputed facts in this action the court cannot determine whether the right to outdoor exercise was clearly established as to this situation.

Defendants reply that plaintiff has mischaracterized the facts of the Norwood case. Defendants argue that in the present case, like Norwood, there was more than sufficient justification for imposing the lockdown and violence continued following the lockdown. Defendants point to evidence showing that Defendant Adams made a considered decision to release the lockdown in

4

1  gradual steps.  Defendants emphasize that Plaintiff's own declaration provides evidence that the
2  African-American inmates at SATF were dissatisfied with the way they were being treated and
3  became openly defiant of authority by being deliberately slow to obey orders or submit to searches.
4  Defendants state that immediately before the lockdown, SATF housed a large number of gang-
5  affiliated inmates and inmates that had just been released from Security Housing Units.  Defendants
6  argue that under these circumstances they could not reasonably have believed that they were
7  violating the constitution.

       **B.**     **Eighth Amendment**

9    "An Eighth Amendment claim that a prison official has deprived inmates of humane
10 conditions must meet two requirements, one objective and one subjective.  Under the objective
11 requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized
12 measure of life's necessities.  The subjective requirement, relating to the defendant's state of mind,
13 requires deliberate indifference."  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (quoting
14 Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995)).

15   "Some form of regular outdoor exercise is extremely important to the psychological and
16 physical well being of [prisoners]."  Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).
17 "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to
18 continuous and long-term segregation."  Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing
19 Spain, 600 F.2d at 199 (term of years confined in segregated unit without outdoor exercise
20 constitutes cruel and unusual punishment)); see also Hearns v. Terhune, 413 F.3d 1036, 1042 (9th
21 Cir. 2005) (allegation that conditions prohibited prisoner from exercising in outdoor yard sufficient
22 to withstand 12(b)(6) motion); Lopez, 203 F.3d at 1133 (allegation of indefinite and thus potentially
23 long-term confinement without outdoor exercise sufficient to state a claim);  Allen, 48 F.3d at 1087
24 (six-week period in which prisoner was allowed only forty-five minutes per week of outdoor exercise
25 sufficient to state Eighth Amendment claim);  Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th  Cir.
26 1984) (denial of outdoor exercise to inmates assigned to administrative segregation for over one year
27 raised "substantial constitutional question").  An allegation that prison officials denied a prisoner

5

1  outdoor exercise for an extended, continuous period of time is sufficient to state an objective
2  violation of a prisoner's constitutional right to humane conditions of confinement.  See Lopez, 203
3  F.3d at 133.
4       In order to plead deliberate indifference, a prisoner must allege that prison officials knew of
5  and disregarded a substantial risk of serious harm to the prisoner.  E.g., Farmer v. Brennan, 511 U.S.
6  825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  A claim that prison officials
7  were aware that a prisoner had been denied outdoor exercise for an extended period of time is
8  sufficient to allege that the prison officials acted with deliberate indifference to the prisoner's basic
9  human needs.  See, e.g., Lopez, 203 F.3d at 1133 (evidence showing that defendants ignored
10 complaints about lack of outdoor exercise sufficient to defeat summary judgment on Eighth
11 Amendment claim); Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 810 (10th Cir. 1999)
12 (where complaint alleged that officials had knowledge plaintiff was being denied outdoor exercise,
13 "factfinder could infer both that prison officials knew of a substantial risk of harm to plaintiff's well
14 being...and that they disregarded that harm"); Allen, 48 F.3d at 1088 (summary judgment on
15 deliberate indifference issue inappropriate where prisoner produced evidence that prison officials
16 were aware that prisoner was denied outdoor exercise).
17      In their third Motion for Summary Judgment, Defendants contended there was no showing of
18 deliberate indifference.  They argued that the deprivation of outdoor exercise for seven months and
19 the limited access to exercise for the succeeding eight months was not sufficiently serious to
20 constitute an objective risk to Plaintiff's health because prison officials were responding to a genuine
21 emergency and fundamental services can be suspended.  Furthermore, they argued there was no case
22 which established a set period of time that outdoor exercise can be withheld when prison officials are
23 attempting to resolve violent conflicts and releasing from a lockdown.  Now Defendants raise the
24 same arguments with regard to the six-month time period from January 31, 2002 through July 31,
25 2002.  They cite the Ninth Circuit's recent ruling in Norwood as authority that a prisoner's right to
26 outdoor exercise after a prison is locked down due to an emergency was not clearly established in
27 2002.
28

### C. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, – U.S.– , 129 S.Ct. 808, 815 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Rodis v. City, County of San Francisco, 558 F.3d 964, 968 (9th Cir. 2009); Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 129 S.Ct. at 815; Rodis, 558 F.3d at 968. The defendant bears the burden of establishing qualified immunity. Crawford-El v. Britton, 523 U.S. 574, 586- 87 (1998).

Where a constitutional violation occurs, a prison official is entitled to qualified immunity if he acted reasonably under the circumstances. Millender v. County of Los Angeles, 564 F.3d 1143, 1148 (9th Cir. 2009). The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity. The first step requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201; Millender, 564 F.3d at 1148. "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Millender, 564 F.3d at 1148 (quoting Saucier, 533 U.S. at 201). In Pearson v. Callahan, 129 S.Ct. 808 (2009), the Supreme Court held that the court could exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. Id. at 818; see also Millender, 564 F.3d at 1149.

The operation of the clearly established federal law standard depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. Anderson v. Creighton, 483 U.S. 635, 639 (1987); Rodis, 558 F.3d at 969. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The

7

contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Rodis, 558 F.3d at 969. "The injured party need not establish that the Defendants behavior had been previously declared unconstitutional." Rodis, 545 F.3d at 969. The inquiry is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. Saucier, 533 U.S. at 202; Rodis, 545 F.3d at 969.

In its March 25, 2009 order[2], the court found that Defendants had not provided enough specific information to establish that the deprivation of exercise from January 31, 2002 through July 31, 2002, did not rise to the level of a constitutional violation. The court found that beyond January 30, 2002, Defendants' evidence was lacking as it was not clear whether the entire investigation was completed by January 30, 2002, or if there was an ongoing investigation or other factors which necessitated the continued lockdown. Since neither Defendant had provided a declaration, the court found it could not determine what their roles were in the decision making process of the lockdown and what information they had available to them at the time of their decisions. The court determined that it was still unclear whether Defendants considered allowing inmates access to the exercise yard or whether other exercise alternatives were considered. The court could not find that a legitimate penological purpose existed when the investigation of the riot, which was the basis of the lockdown, appears to have been completed by January 30, 2002, and prison officials did not believe that the riot was a pre-organized attack on staff.

Defendants have not offered any new evidence in their Motion for Reconsideration

---

[2] The court found the following facts undisputed for the purposes of resolving the third motion for summary judgment: On January 9, 2002, there was a fight involving nine white inmates in an exercise yard, in which one inmate was seriously injured with cuts to his neck and face. Inmates who were not involved in the incident were given unclothed body searches before they were allowed to enter their housing units. Approximately ninety minutes after the initial incident, there was a physical altercation between staff and inmates which involved the attempted murder of a correctional officer. To control the attack, one officer used a 37 mm gun, fourteen officers used pepper spray, two officers used their side-handle batons, and eleven officers used physical force. Numerous inmate-manufactured weapons were found in the area of the attack. A lockdown was imposed and an incident report of the January 9, 2002, incident was not completed until January 30, 2002, due to the seriousness of the incident, the number of staff injured, the number of inmates involved, and the number of weapons recovered.

1  demonstrating that they had a penological purpose for the lockdown between January 31, 2002 and
2  July 31, 2002.  Defendants cite Plaintiff's declaration in which he related that staff at SATF punished
3  uninvolved inmates after violent incidents by imposing restrictions and that the African-American
4  inmates at SATF were dissatisfied with the staff's ability to resolve the war between Northern and
5  Southern Hispanic inmates because the constant fighting disrupted their access to the yard.
6  Defendants reiterate their evidence that at the time of the January 9, 2002 incident, SATF housed a
7  large number of gang affiliated inmates and inmates that had just been released from Security
8  Housing Units.  However, it remains unclear whether the entire investigation was completed by
9  January 30, 2002, whether there were other factors which necessitated the continued lockdown, or
10 whether the Defendants considered allowing inmates access to the exercise yard.   Thus, no new
11 evidence warrants reconsideration.

12        In their motion for reconsideration Defendants contend that the second prong of Saucier is
13 satisfied, and they are entitled to qualified immunity because the Ninth Circuit recently decided that
14 a prisoner's right to outdoor exercise after a prison is locked down due to an emergency was not
15 clearly established in 2002. See Norwood, 572 F.3d 626.  Defendants argue that in the instant case,
16 like in Norwood, prison officials were responding to emergency conditions in 2002 when they
17 imposed a lockdown following a major incident where numerous inmates attacked staff.  Defendants
18 argue that like in Norwood they lifted the lockdown gradually, beginning with access to the visiting
19 room, then day room access, and finally, outdoor exercise.  Defendants also cite other cases
20 specifically referred to by the Norwood court, in which there was no Eighth Amendment violation
21 despite five, nine, or even ten months denial of outdoor exercise.

22        In Norwood the plaintiff brought a § 1983 action, alleging that corrections officials violated
23 the Eighth Amendment by depriving him of outdoor exercise beginning in 2002.  During a
24 particularly violent period at CSP-Sacramento, Norwood was denied outdoor exercise during four
25 separate extended lockdowns over the course of two years.  In Norwood, there was evidence that
26 extraordinary violence had gripped the prison and both staff and inmates were in danger.   At least
27 one prisoner had died and others (prisoners and guards) had been severely wounded.  Id. at 632.
28

Despite the violence, officials did not always initiate total lockdowns after inmate-on-inmate attacks. The prison's response "[d]epend[ed] on the circumstances of the assault . . ." Id.  Whereas officials would not lock down for fisticuffs and a one-on-one situation, they would lock down for "a slashing assault, or a stomping, or multiple inmates involved in a melee." Id.  After the first lockdown in early 2002, which was imposed following an attack by eleven Hispanic inmates on four correctional officers, nearly killing one of them, officials eventually decided it was safe to begin restoring normal programs, beginning with "critical workers." Id. at 628.  As correctional officials incrementally unlocked and released inmates to the small yards for exercise or lifted other privileges the violence continued to happen, sometimes prompting officials to call back their decisions. Id. at 632.  As such, the officials monitored the day-to-day situation and made reasoned decisions, balancing the obligation to provide for inmate and staff safety against the duty to accord the inmates the rights and privileges to which they were entitled.   The Ninth Circuit in Norwood determined that based on this evidence the defendants were entitled to qualified immunity because it would not have been clear to a reasonable officer that denying outdoor exercise was unlawful given the extraordinary violence gripping the prison, particularly because officials had a duty to keep inmates safe and their judgments as to how to do that were entitled to wide-ranging deference. Id. at 632-33.

      The court finds that the facts presented in this case are sufficiently different than those in Norwood for the court to find that the Ninth Circuit's decision in Norwood does not demand finding Defendants are entitled to qualified immunity. Norwood concerned a serious of violent incidents, resulting in numerous lockdowns. See Norwood, 572 F.3d at 628.  In this action, the events of only one day caused one lengthy lockdown.   The initial attack on correctional officers in Norwood resulted in about a three month lockdown, even though prison officials did not know the reason for the attack. See id.  Here, the lockdown continued for seven months even though prison officials had finished their investigation into the attack and knew its causes after one month.   In Norwood, the Ninth Circuit found that the defendants had presented substantial reasons for imposing the lockdowns, see id. at 632, yet in this action, the court has found Defendants have failed to show the penological purpose of the lengthy lockdown.  The investigations in Norwood were lengthy and the

10

lockdowns continued while they were being completed. See id. at 633. In this action, the evidence shows the investigation was not ongoing after January 30, 2002, yet Plaintiff was denied outdoor exercise until August 2002. Thus, the court finds Norwood's facts distinguish it from the current action because, unlike Norwood, Defendants have failed in their burden to show the penological need for the lengthy lockdown.

Defendants' position is that the Ninth Circuit in Norwood found that the law was not clearly established in 2002 that denial of exercise because of a prison emergency can violate the Constitution. The court does not read Norwood to find that any prison official who deprives an inmate of outdoor exercise is entitled to qualified immunity as long as the lockdown was begun because of a prison emergency. In Norwood, the Ninth Circuit did recognize that prior cases, which had found the constitutional right to outdoor exercise, arose from inmates in disciplinary segregation who were denied outdoor exercise as a normal condition of their confinement, not an emergency. Norwood, 572 F.3d at 633. However, the court in Norwood recognized that the question on qualified immunity is "highly context-sensitive, turning on whether it would be clear to a reasonable officer that denying outdoor exercise was unlawful '*in the situation he confronted*.'" Norwood, 572 F.3d at 631 (quoting Saucier, 533 U.S. at 202) (emphasis added). The court finds that a reasonable officer would have known in 2002 that continuing to deprive an inmate of outdoor exercise when no penological reason existed would violate the Constitution even if an emergency caused the original deprivation. The notion that denial of outdoor exercise for extensive periods of time violates the Eighth Amendment has been well established in the Ninth Circuit since at least the 1980s. See Lopez, 203 F.3d at 1132-33 (9th Cir. 2000); Allen, 48 F.3d at 1088. The law has also been clear that circumstances may justify long term outdoor exercise deprivation *if* the defendant provides evidence of the reason for the deprivation. See LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir.1993) (finding evidence that loss of outside exercise privileges was linked to the plaintiff's own misconduct, which raised serious and legitimate security concerns within the prison). Unlike Norwood and the cases cited to in Norwood, Defendants in this action have failed to provide sufficient evidence of the penological reason for the lengthy delay. For example, in Jones v. Garcia, 430 F.Supp.2d 1095,

11

1103 (S.D.Cal. 2006), a case cited to by the court in Norwood, the district court found that the evidence established that plaintiff's outdoor exercise was suspended after outdoor riots, the defendants attempted to restore yard privileges but each time were thwarted by another eruption of race riots, and the plaintiff would have been in more danger if he had been permitted outdoor exercise. Jones, 430 F.Supp.2d at 1103.   The undisputed evidence in Jones supported the defendant's assertion that she denied plaintiff outside exercise out of a desire to ensure the safety and security of the staff and inmates and not deliberate indifference. Id.   As discussed in the court's orders denying summary judgment, no such uncontroverted evidence was presented to the court in this action.  Absent this evidence, qualified immunity is not warranted.  Thus, the court finds that Norwood does not mandate the court find Defendants are entitled to qualified immunity merely because the deprivation began after an emergency.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

Dated:   September 9, 2009          /s/ Anthony W. Ishii
                                    CHIEF UNITED STATES DISTRICT JUDGE